**McGuireWoods**

McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Phone: 804.775.1000
Fax: 804.775.1061
www.mcguirewoods.com

Lucy Jewett Wheatley
Direct: 804.775.4320
lwheatley@mcguirewoods.com

June 20, 2023

**VIA ELECTRONIC FILING**
The Honorable Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

      Re:    No. 22-1006, *Vans, Inc. and VF Outdoor, LLC v. MSCHF Product Studio, Inc.*, Letter Brief regarding the Supreme Court's Decision in *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. __, 2023 WL 3872519 (2023)

Dear Ms. Wolfe:

Pursuant to the Order dated December 15, 2022 (ECF 137), Plaintiffs-Appellees Vans, Inc. and VF Outdoor, LLC (collectively, "Vans") respectfully submit the following letter brief regarding the effect of the Supreme Court's June 8, 2023 decision in *Jack Daniel's Properties, Inc. v. VIP Products LLC*, No. 22-148 (U.S.) ("*Jack Daniel's*") on the issues in this appeal.

**A.    Summary of the Argument**

Defendant-Appellant MSCHF Product Studio, Inc. ("MSCHF") brought the above-captioned appeal to challenge the district court's issuance of a preliminary injunction against its further promotion, sale, and distribution of its "Wavy Baby" sneakers. As shown below, the Wavy Baby distorts and mimics the trade dress and trademarks that Vans has used for decades with its Old Skool sneakers:



*Vans' Old Skool*       *MSCHF's Wavy Baby*

MSCHF's sole challenge to the grant of a preliminary injunction in this case was its contention that the test in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) ("*Rogers*") should have been

Hon. Catherine O'Hagan Wolfe
June 20, 2023
Page 2

applied by the district court. The Supreme Court's decision in *Jack Daniel's* forecloses that argument.

MSCHF's position is that the district court improperly applied the likelihood of confusion factors espoused in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961), instead of the First Amendment test for expressive works adopted in *Rogers*.[1] (Opening Br. at 21-34). In MSCHF's view, its shoes (which it sold in the thousands to individual consumers) are "artistic" works that "parody" Vans and consumer culture. (*Id.*)

Assuming the district court did not need to apply *Rogers*, however, MSCHF's appeal does not challenge the district court's finding that the Wavy Baby shoes are likely to cause confusion with Vans' Old Skool trademarks and trade dress under the *Polaroid* factors, or whether MSCHF's Wavy Baby shoes constitute a successful "parody" that obviates that likely confusion. (*Id.* at 21 n.2: Resp. Br. at 30-31). Nor does MSCHF challenge the other factors that support the award of preliminary relief here, including the irreparable harm to Vans, balance of hardships, and public interest. Thus, the sole question before the Court in deciding whether the district court properly granted a preliminary injunction against MSCHF is whether the district court should have applied *Rogers* as a threshold test before applying the *Polaroid* factors.

The Supreme Court's decision in *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. ___, 2023 WL 3872519 (2023), answered this question solely, and decidedly, in Vans' favor.

Consistent with this Court's precedent in *Rogers* and its progeny, the Supreme Court found that the *Rogers* test is, if applicable, a "cabined" doctrine limited to expressive uses of a trademark in connection with books, films, paintings, and similar artistic media. *Jack Daniel's* confirmed that *Rogers* is not applicable to uses of trademarks or trade dresses in a manner that identifies a source or sponsor of a good, or that consumers would understand as indicating source or sponsorship, which fall solely under the Lanham Act's likely confusion standard. This is true, the Supreme Court held, even if the trademark or trade dress allegedly expresses an idea, such as humor, parody, or social commentary. Instead, any expressive purpose is at most a factor to consider in analyzing the likelihood of confusion under the Lanham Act.

The district court here conducted the precise analysis that the Supreme Court endorsed in *Jack Daniel's*. Recognizing that MSCHF uses Vans' trademarks and trade dress in a manner that consumers would understand (and in fact understood) indicates a source or sponsor of the goods (in this case, Vans), the court analyzed the *Polaroid* factors and considered MSCHF's parody defense within the context of those factors. (SPA-6-14). MSCHF does not challenge those underlying findings, or the conclusions drawn from them, on appeal, relying instead on the district court's purported failure to apply the *Rogers* test. But the *Jack Daniel's* decision, along with this Court's precedent, confirms that *Rogers* has no application here. The district court's preliminary injunction should thus be affirmed.

---

[1] Although the Court need not apply the *Rogers* test here, the test asks: (1) whether the accused infringer's use of a trademark is "artistically relevant" to the expressive work; and (2) if so, whether the use is nonetheless "explicitly misleading." *Rogers*, 875 F.2d at 999-1001, 1006.

Hon. Catherine O'Hagan Wolfe
June 20, 2023
Page 3

### B. The *Jack Daniel's* Decision

#### 1. *Like Here,* Jack Daniel's *Addressed Uses of a Trademark in a Manner that Indicates to Consumers the Source or Sponsor of the Relevant Product.*

*Jack Daniel's* addressed largely similar facts and arguments to those presented here. Like here, the trademark owner, Jack Daniel's Properties, Inc., and the accused infringer, VIP Products LLC, make and sell consumer goods—whiskey and dog toys, respectively—though unlike *Jack Daniel's*, the disputed goods sold by Vans and MSCHF here are in fact the same type of consumer good: sneakers. 2023 WL 3972519, at *3.

Also parallel to this case, VIP Products released what it claimed was a parody of Jack Daniel's whiskey in the form of a dog toy with the branding "Bad Spaniels." Shown below, the Bad Spaniels toy mimicked the trademarks and trade dress owned and used by Jack Daniel's on its Old No. 7 Tennessee Sour Mash Whiskey bottle, including: (1) replicating the size and shape of the Old No. 7 bottle; (2) using "a black label with stylized white text and a white filigreed border"; (3) replacing JACK DANIEL'S with BAD SPANIELS while maintaining the same letter font and arch; (4) replacing the branding "Old No. 7 Tennessee Sour Mash Whiskey" with "The Old No. 2 On Your Tennessee Carpet"; and (5) replacing "40% alc. by vol. (80 proof)" with "43% poo by vol." and "100% smelly." *Id.* at *5.



#### 2. *Like Here, the Accused Infringer in* Jack Daniel's *Argued that the Parodic Intent of Its Use was Expressive and Entitled to Protection under* Rogers.

After suing for a declaratory judgment of non-infringement and no trademark dilution, like MSCHF here, VIP Products argued below and on appeal that its dog toys were expressive works

under the First Amendment requiring application of the *Rogers* test. *Id.* at *6. The district court rejected this argument after finding that VIP Products used the Jack Daniel's marks and trade dress as trademarks and thus applied the standard likelihood of confusion analysis. *Id.* After Jack Daniel's succeeded at a bench trial, the Ninth Circuit reversed the district court's pretrial finding that the *Rogers* test was inapplicable, holding that because the Bad Spaniels toy "'communicates a humorous message,'" Jack Daniel's had to satisfy the *Rogers* test to establish infringement. *Id.* (quoting *VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 93 F.3d 170, 1175 (9th Cir. 2020)). On remand, the district court found that Jack Daniel's could not satisfy *Rogers* and thus granted summary judgment for VIP Products. *Id.* A second appeal followed to the Supreme Court.

### 3. *The Supreme Court Rejected the Application of* **Rogers** *to "Expressive" Trademark Uses and Confirmed that* **Rogers** *is a "Cabined Doctrine."*

The Supreme Court reversed the Ninth Circuit's decision that *Rogers* applies, holding that "[w]ithout addressing whether *Rogers* has merit in other contexts, . . . it does not [apply] when an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods." *Id.* Instead, when the use of an allegedly infringing trademark has a meaning beyond "source designation," such as to parody another's marks, "that kind of message matters in ***assessing confusion***"; it does not open the door to application of the *Rogers* test. *Jack Daniel's*, 2023 WL 3872519, at *6 (emphasis added).

The Supreme Court grounded its holding in this Court's precedent, starting with *Rogers* itself. The Court observed that while *Rogers* applied to titles of "artistic works," the Second Circuit did not intend for *Rogers* to apply "[i]n the typical case," where "the name of a product was more likely to indicate its source, ***and to be taken by consumers in just that way***." *Id.* at *7 (emphasis added) (discussing *Rogers*, 875 F.2d at 1000).

Looking at *Rogers'* progeny, the Supreme Court likewise observed that the application of *Rogers* has been limited to instances in which the asserted trademarks are not used to indicate source or sponsorship but as part of a purely expressive work, such as in the lyrics and title of a song; in a painting of a historic event; and in the dialogue of a film. *Id.* (citing *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 901 (9th Cir. 2002) (use of "Barbie" in "Barbie Girl" did not "speak[] to [the song's origin]"); *Univ. of Ala. Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1279 (11th Cir. 2012) (sports artist's use of Crimson Tide uniforms to memorialize notable football event not infringing); *Louis Vuitton Malletier S. A. v. Warner Bros. Ent. Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012) (actor's statement in film that he had "Louis Vuitton" luggage (while mispronouncing it "Lewis") was not trademark use)).

When an infringing mark is used in a manner that indicates to consumers the source or sponsorship of a good or service, on the other hand, the Supreme Court found that courts have applied the standard likelihood-of-confusion analysis. For example, the Supreme Court noted that this Court in *Harley-Davidson, Inc. v. Grottanelli*, applied the *Polaroid* factors even while acknowledging that the accused infringer's modifications of the Harley-Davidson logo conveyed

Hon. Catherine O'Hagan Wolfe
June 20, 2023
Page 5

a "'somewhat humorous[]' message," because the use of the logo was "a quintessential 'trademark use.'" *Id.* (quoting 164 F.3d 806, 812-13 (2d Cir. 1999)).[2]

Based on its survey of this Court's precedent and other courts applying *Rogers*, the Supreme Court concluded that "[*Rogers*] has always been a cabined doctrine." *Id.* at *8. That is, the test is limited only to "cases involving 'non-trademark uses'—or otherwise said, cases in which 'the defendant has used the mark' at issue in a 'non-source-identifying way.'" *Id.* (citation omitted). The test does not apply when the trademark is used "'to identify or brand goods or services'" *Id.* (citation omitted).

### 4. The Supreme Court Instead Instructed that Parody Defenses Should be Analyzed Solely Under the Lanham Act.

Finally, pertinent to this appeal, the Supreme Court held that the fact that a trademark use may have other, non-trademark purposes (such as to parody the trademark owner) should be considered, at most, as part of the "standard trademark analysis" under the Lanham Act. *Jack Daniel's*, 2023 WL 3872519, at *9. "When a mark is used as a source identifier, the First Amendment does not demand a threshold inquiry [such as the *Rogers* test]." *Id.* at *2.

The Court explained that applying *Rogers* in every instance in which a trademark expresses a message other than indicating the source or sponsor of a good or service would cause *Rogers* to "take over much of the world." *Id.* at *9. Indeed, "trademarks are often expressive, in any number of ways," even though they are also source identifiers. *Id.* (using the examples of a Frangelico bottle in the shape of a friar's habit connoting "olden monastic roots," or a band name that not only indicates the source of the band's music but also comments on a social issue).

Instead, the Supreme Court held, "a trademark's expressive message—particularly a parodic one, as VIP asserts—may properly figure in assessing the likelihood of confusion." *Id.* at *10. In that analysis, as the district court applied here, "[a] parody must 'conjure up' 'enough of [an] original to make the object of its critical wit recognizable.'" *Id.* (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 588 (1994)). "[T]he parody must also create contrast, so that its message of ridicule or pointed humor comes clear." *Id.* Only if these requirements are satisfied may a successful parody "make a difference in the standard trademark analysis." *Id.*

---

[2] The Supreme Court's reasoning is also consistent with this Court's other precedents, including *Cliff Notes, Inc. v. Bantam Doubleday Dell Publishing Group, Inc.*, which recognized that *Rogers* applies only when "expression, and not commercial exploitation of another's trademark, is the primary intent." 886 F.2d 490, 495 (2d Cir. 1989). The *Jack Daniel's* decision further clarifies that *Rogers* is limited to only uses of a trademark that do not indicate a source or sponsor of the goods or services with which the mark is used (and thus exploit another's trademark).

**C.  The Supreme Court Confirmed that the *Rogers* Test Does Not Apply Here Because MSCHF's Wavy Baby Uses Vans' Old Skool Marks and Trade as Trademarks and Trade Dress.**

As in *Jack Daniel's*, even accepting MSCHF's purported parodic or artistic intent, MSCHF undoubtedly uses Vans' trademarks and trade dress in the exact same manner, and for the same purpose, that Vans uses its trademarks and trade dress, *i.e.*, to create an association with Vans. And unlike in *Jack Daniel's*, where a whiskey bottle trade dress was used on a dog toy, here MSCHF used a sneaker trade dress on a sneaker, and thus more directly uses the Vans' trade dress source identifier as a trade dress source identifier. And in any event, MSCHF's use is not solely expressive and thus entitled to *Rogers*' "cabined" application.  Under *Jack Daniel's* and this Court's precedent, therefore, the *Rogers* test does not apply and the standard *Polaroid* factors—the precise factors the district court applied below (SPA-6-14)—control.  2023 WL 3872519, at *8-9.

The same analysis the Supreme Court conducted in *Jack Daniel's* to find that VIP Products used Jack Daniel's marks as a trademark applies equally here.  There, the Court compared VIP Products' use and placement of Jack Daniel's marks and trade dress with the use and placement of the same or similar source-identifying marks and trade dress on Jack Daniel's own product, noting the distinct similarities.  2023 WL 3872519, at *5.

So too here.  MSCHF's uses of Vans' Old Skool Marks and Trade Dress mimics the very uses and placement of the same marks and trade dress—and the overall branding—used by Vans. MSCHF does not avoid this obvious comparison, admitting through its chief creative officer, Lukas Bentel, that "the base of the shoe before our transformation ***is of course a Vans***, and I think there is no doubting that."  (SPA-8-9 (emphasis added)).

A side-by-side comparison of Vans' trademarks and trade dress with MSCHF's Wavy Baby, as well as the overall appearance of the packaged products, also confirms the obvious similarities in uses and placement, including: (1) the same placement of the side stripe emanating from the heel counter to the eyestay reinforcement; (2) a rubberized white side wall that, although wavy, maintains the same perimeter and relative thickness around the shoe; (3) placement of a red badge with white logo detailing on the rear heel; and (4) use of the same waffle-patterned outsole.  (Resp. Br. at 13-14).  MSCHF also copies the same black-and-white colorway of the classic Vans Old Skool and even the shoe box used by Vans.  (*Id.*)  Simply put, there is no dispute that MSCHF uses the Old Skool Marks and Trade Dress in the same manner as Vans: to identify and indicate a source or sponsor of its shoes in the minds of consumers.

Hon. Catherine O'Hagan Wolfe
June 20, 2023
Page 7

| Vans' Trademarks/Trade Dress | WAVY BABY Design |
|---|---|
| | |
| | |
| | |
| | |

Hon. Catherine O'Hagan Wolfe
June 20, 2023
Page 8



Other evidence in the record also confirms that MSCHF uses Vans' marks and trade dress to identify and brand its Wavy Baby shoes. MSCHF itself acknowledges that the Wavy Baby is in "a straight sneaker space" and is part of "*an actual sneaker brand*, MSCHF Sneakers." (SPA-10 (emphasis added)). Consumers themselves—whose interest in avoiding confusion the Supreme Court emphasized is the primary focus of the Lanham Act (2023 WL 3872519, at *1)—have also repeatedly recognized and understood MSCHF's use of Vans' marks and trade dress as indicating the source or sponsor of the Wavy Baby shoes, incorrectly assuming that the source or sponsor is Vans. (*See* Resp. Br. at 15-17 (citing A-782-85, ¶¶ 3-10)).

To remove any doubt, MSCHF's use of Vans' trademarks and trade dress follows a pattern of using the famous marks and trade dress of other shoe brands for its own benefit. MSCHF itself concedes that it has used Nike's trademarks and trade dress to release its "Jesus Shoes" and "Satan Shoes," as well as the trademarks and trade dress of Birkenstocks to release its "Birkinstocks" sandals. (Opening Br. at 6). This practice is itself evidence of MSCHF's use of

those marks as trademarks. *See Jack Daniel's*, 2023 WL 3872519, at *10 (finding "VIP's practice as to other products in the Silly Squeakers line," which followed the same pattern of using the trade dress and trademarks of other famous liquor brands, indicated its use of Jack Daniel's marks as trademarks).

Simply put, MSCHF admittedly took Vans' Old Skool shoe and its associated marks and trade dress and distorted them through the mere application of a digital "liquify" filter. (Opening Br. at 10). As in *Jack Daniel's*, which involved actual changes to the imagery and wording of Jack Daniel's marks, these changes do not transform the original purpose of the marks and trade dress from being source identifiers to now serving a solely artistic, expressive purpose. This is especially true when, as here, MSCHF sold the shoes to ordinary consumers as part of a distinct MSCHF Sneakers brand, not through its purported "art collective." (SPA-10).

### D. *Jack Daniel's* Confirms that the District Court Properly Considered MSCHF's Parody Defense Under the *Polaroid* Factors, Without Applying *Rogers*.

Because MSCHF uses Vans' trademarks and trade dress in a manner that identifies to consumers the source or sponsor of the Wavy Baby shoes, the district court properly applied the standard for determining the likelihood of confusion under the Lanham Act (the *Polaroid* factor) in granting the preliminary injunction. (SPA-6-14). As the Supreme Court instructed, the district court also properly considered MSCHF's First Amendment arguments regarding its supposed parody under the *Polaroid* factors and the Lanham Act, not the First Amendment. (SPA-11-14).

MSCHF's argument in reply that the district court's parody analysis without a threshold *Rogers* inquiry fails to fully protect its First Amendment interests (Reply Br. at 14-22) is thus a nonstarter—the Supreme Court stated clearly that the standard Lanham Act analysis already adequately protects any First Amendment interests MSCHF might have. *See Jack Daniel's*, 2023 WL 3872519, at *2 ("When a mark is a source identifier, the First Amendment does not demand a threshold inquiry."). *Rogers* is not applicable to this case.

In considering MSCHF's parody defense, moreover, the district court followed the same standard adopted by the Supreme Court in *Jack Daniel's*, asking whether the Wavy Baby conjured up the original, parodied product while simultaneously conveying that it is not the original product by clearly communicating "'some articulable element of satire, ridicule, joking, or amusement.'" (SPA-12 (quoting *Louis Vuitton Malletier, S.A. v. My Other Bag Inc.*, 156 F. Supp. 3d 425, 434-35 (S.D.N.Y. 2016) (internal quotations and citations omitted)). The Court in *Jack Daniel's* adopted the same standard, explaining that a parody must both "'conjure up' 'enough of [an] original to make the object of its critical wit recognizable'" and "create contrast, so that its message of ridicule or pointed humor comes clear." *Jack Daniel's*, 2023 WL 3872519, at *9. Applying this standard, the district court found that "[w]hile the Wavy Baby shoes convey their similarity and reference to the Old Skool shoe Marks, the shoes do not sufficiently articulate 'an element of satire, ridicule, joking or amusement' clearly indicating to an ordinary observer [that] the Defendant is 'not connected in any way with the owner of the target trademark.'" (SPA-12-23 (citation omitted)).

Because MSCHF does not challenge this finding or the district court's other findings under the likelihood of confusion factors, those findings and ultimate conclusion of likely confusion drawn from them are not in dispute. (Opening Br. at 21 n.2; Resp. Br. at 30-31). Even if they were, MSCHF has not shown (and cannot show) that those findings are clearly erroneous or that the conclusion of likely confusion is incorrect as a matter of law. (*See* Resp. Br. at 44-58). Under *Jack Daniel's* and this Court's precedent, the district court's grant of a preliminary injunction against MSCHF should thus be affirmed.

E. *Jack Daniel's* **Provides a Separate Basis for Preliminary Relief on Vans' Dilution Claims.**

Even if the Court were to reach the merits of the *Polaroid* factors and find that the grant of the preliminary injunction on the basis of a likelihood of confusion constituted an abuse of discretion (it did not, for the reasons previously stated), *Jack Daniel's* clarified that MSCHF's parody defense is not applicable to Vans' separate trademark dilution claims because MSCHF is using Vans' trademarks and trade dress in a manner that designates a source or sponsor of its Wavy Baby shoes. Thus, Vans' dilution claims, which the district court did not address in granting preliminary relief, provide a separate basis for an injunction that the district court should be allowed to consider in the event of remand.

In *Jack Daniel's*, the Ninth Circuit had held that Jack Daniel's could not sustain its trademark dilution claims against VIP Products because VIP Products' use of Jack Daniel's trademarks "convey[ed] a humorous message" and thus constituted noncommercial use that is exempt from liability for dilution. 2023 WL 3872519, at *10-11 (citing 15 U.S.C. § 1125(c)(3)(C)).

The Supreme Court reversed this holding, reasoning that the Lanham Act had a separate exemption for "fair use" of a famous trademark, including uses "'parodying, criticizing, or commenting upon'" a famous mark owner. *Id.* at *10 (quoting § 1125(c)(3)(A)(ii)). But this fair use exemption itself had an exception "when the use is 'a designation of source for the person's own goods or services.'" *Id.* (quoting § 1125(c)(3)(A)). Because the Ninth Circuit's ruling subsumed the fair use exemption by finding that any allegedly humorous use of a trademark falls under the broader noncommercial use exemption, the Supreme Court reversed. *Id.* at *11. The Court also confirmed, consistent with the language of the Lanham Act, that the fair use defense cannot apply to uses that are source-identifying. *Id.*

Here, MSCHF clearly uses Vans' trademarks and trade dress in a manner that designates a source or sponsor of its Wavy Baby shoes. *Supra*, § C. MSCHF's use thus falls outside of the fair use exemption, and its parody defense fails against Vans' trademark dilution claims. Accordingly, should this Court determine that the district court committed error in granting a preliminary injunction on Vans' infringement claims (it did not), it should nonetheless remand to the district court for consideration of Vans' separate dilution claims as an alternative basis for granting preliminary relief.

Hon. Catherine O'Hagan Wolfe
June 20, 2023
Page 11

### F. Conclusion

For at least these reasons and those set forth in Vans' response brief (ECF 75) and at oral argument, the district court's Order enjoining MSCHF should be affirmed.

        Respectfully submitted,

        McGuireWoods LLP

By:    */s/ Lucy Jewett Wheatley*
        Lucy Jewett Wheatley
        800 East Canal Street
        Richmond, VA 23219
        T: (804) 775-4320
        lwheatley@mcguirewoods.com

        Tanya L. Greene
        Wells Fargo Center, South Tower
        355 South Grand Avenue, Suite 4200
        Los Angeles, CA 90071
        T: (213) 457-9879
        tgreene@mcguirewoods.com

        Philip A. Goldstein
        1251 Avenue of the Americas, 20th Floor
        New York, NY 10020
        T: (212) 548-2167
        pagoldstein@mcguirewoods.com

        *Counsel for Plaintiffs-Appellees*
        *Vans, Inc. and VF Outdoor, LLC*