## SWANSON, MARTIN & BELL, LLP

ATTORNEYS AT LAW
330 NORTH WABASH • SUITE 3300
CHICAGO, ILLINOIS 60611
(312) 321-9100 • FAX (312) 321-0990

June 20, 2023

BY ECF

Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

> RE: **22-1006, Vans, Inc. v. MSCHF Product Studio, Inc.**
> **Letter Brief Regarding the Supreme Court's Decision in *Jack Daniel's Properties, Inc. v. VIP Products, LLC*, 599 U.S. __, 2023 WL 3872519 (2023)**

Dear Ms. Wolfe:

MSCHF submits this letter pursuant to this Court's order of December 15, 2022 (ECF 137). This letter addresses the effect on the above-captioned matter of the United States Supreme Court's decision in *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, No. 22-148, 2023 WL 3872519 (U.S. June 8, 2023) and explains why reversal in this case is mandated both by *Jack Daniel's* and by *Rogers v. Grimaldi*.

The Supreme Court's *Jack Daniel's* decision demonstrates that "threshold" tests or "First Amendment filter[s]" (such as *Rogers*) for assessing Lanham Act claims remain viable law. *Jack Daniel's*, at *10, n1. Although the Supreme Court limited the application of *Rogers* when a defendant uses an allegedly infringing trademark ***as its own trademark***, *Jack Daniel's*, at *10, the Court did ***not*** limit the application of *Rogers* in any other circumstance, including, as is the case here, when a defendant references a plaintiff's trademark in defendant's own artistic, expressive speech that does not use the plaintiff's trademark as an indicator of source. As such, *Rogers* remains binding precedent in this Circuit, and fully protects MSCHF's reference to Vans' Old Skool trade dress in the MSCHF-labeled *Wavy Baby* artworks. Furthermore, even if this Court reached the *Polaroid* factors, the Supreme Court held that, when a defendant intends to use a mark as a parody, the likelihood of confusion factors must account for the full context of the parody. *Id.*

As MSCHF explained in its briefing and argument in this appeal, the district court erred by failing to apply *Rogers* despite making an explicit finding that **MSCHF used its own branding**. Instead, the district court started with the likelihood of confusion test, ignoring what even the district court recognized as parodic content, and without adjusting the likelihood of confusion

S‌WANSON, M‌ARTIN & B‌ELL, LLP

Page 2

factors to account for parody.[1] The clarity provided by the Supreme Court illuminates the district court's mistakes and compels reversal and dismissal of Vans' complaint.

**I. Background**

MSCHF, a renowned American art collective, designed its *Wavy Baby* artwork to critique (i) the transformation of the now ubiquitous Vans Old Skool shoe, with its simple but now staid design, from a counter-culture icon to a symbol of mass-consumerism, and (ii) the absurdity of a multi-billion dollar collectible industry centered upon one of the most utilitarian of goods – shoes. (A-367 ¶¶56-59; A-498 ¶31; A-501 ¶ 38; A-502 ¶40). MSCHF took the iconic Vans skate shoe and created a statement piece. MSCHF "liquifies" or "distorts" Vans' trade dress, but because there is an abundance of shoe designs strikingly similar to the Vans' Old Skool (A-303 to A-316), the *Wavy Baby* piece evokes just enough of the Vans aesthetic for the audience to know that Vans is the target of MSCHF's commentary.

MSCHF places its artistic expressions within the culture it comments upon. (A-271). So MSCHF placed its expression about the Vans Old Skool shoe into a work of art shaped like a shoe – then told everyone not to wear it. (A-387). MSCHF titled its artwork *Wavy Baby* – a title that describes the shape of the shoe (wavy) and its originality (baby). (A-385). MSCHF does not engage in traditional advertising. (A-714). Instead, MSCHF creates curiosity about its next drop, driving attention to its website. (A-496).

Proof of the effectiveness of the expression embodied in the *Wavy Baby* artwork is that it inspired others to create their own expression, including by placing *Wavy Baby* into dream sequences of music videos (A-377) and onto a range of TikTok and Instagram posts commenting on the bizarre nature of MSCHF's creation, an example of which is shown below:

---

[1] These legal errors are subject to *de novo* review. *See Amer. Exp. Fin. Advisors Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir. 1998); *Tiffany and Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 86 (2d Cir. 2020).

SWANSON, MARTIN & BELL, LLP

Page 3



(A-382-83). And MSCHF was invited to display *Wavy Baby* at both the internationally renowned Perrotin Gallery and at the world-famous Art Basel art fair (displays that have, so far, been prevented because of the prior restraint injunction entered by the district court). (A-272).

Vans did not appreciate the mockery and sued. MSCHF responded that the Second Circuit's binding precedent in *Rogers* permits the artistic use of another's trademarks in an expressive work, as long as it has some artistic relevance (which *Wavy Baby* does) and is not explicitly misleading (which *Wavy Baby* is not). 875 F.2d 994 (2d Cir. 1989). MSCHF also argued that even if *Rogers* did not apply, no confusion exists when the likelihood of confusion factors are adjusted for parody. *See, e.g.*, *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 416-21 (S.D.N.Y. 2002).

In light of the Supreme Court's decision in *Jack Daniel's*, it is significant that the district court acknowledged that "[MSCHF] *included its own branding on the label*." (SPA-12). But the district court erred as a matter of law by failing to adopt either the *Rogers* approach or the adjusted likelihood of confusion approach.

The court never cited *Rogers*, let alone applied this Circuit's binding test to MSCHF's artistic expression. Rather, the court simply applied the *Polaroid* factors, without any adjustment for the parodic nature of MSCHF's speech. In the district court's view, "the satirical message presented by the Wavy Baby shoes is not readily perceived from the product without the accompanying manifesto or descriptions." (SPA-12). Ignoring the context and focusing on the "shoes," the Court criticized MSCHF's art as "fail[ing] to convey the satirical message." *Id.*

MSCHF appealed. After expedited briefing and oral argument in this case, the Supreme Court granted Jack Daniel's writ of certiorari in another matter involving the *Rogers* test. This Court then held this matter in abeyance pending the Supreme Court's decision in *Jack Daniel's*.

## II. *Jack Daniel's v. VIP Products*

VIP Products sells dog toys in pet stores. Its offerings include a series of dog toys that parody alcoholic beverages. Jack Daniel's needs no introduction. VIP created a "Bad Spaniels" parody of Jack Daniel's iconic bottle. Jack Daniel's sent a cease and desist letter. VIP filed a declaratory action and claimed in its complaint that it held trademark rights in "Bad Spaniels."

The matter made its way to the Supreme Court, where the Court addressed the applicability of First Amendment thresholds in trademark litigation and when the likelihood of confusion test should be adjusted for parody.

On the first matter, the Supreme Court held:

> Without deciding whether *Rogers* has merit in other contexts, we hold that it does not when an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods...VIP used the marks derived from Jack Daniel's in that way, so the infringement claim here rises or falls on likelihood of confusion.

*Jack Daniel's*, at *10.

The Supreme Court's holding that *Rogers* does not apply to Bad Spaniels was rooted in VIP's concession in its complaint that it used the Bad Spaniels mark as a source-identifier for the product. *Jack Daniels*, *6. The Court also noted that VIP had sought to register other similar marks in its Silly Squeakers toy line and that the hangtag of Bad Spaniels displays the relevant marks in a source-identifying way. These factors preclude the application of *Rogers*, because VIP used Jack Daniel's trademark as trademarks. As the Supreme Court explained, absent the presence of various contextual considerations, *Rogers* "is not appropriate when the accused infringer has used a trademark to designate the source of its own goods – in other words, has used a trademark as a trademark." *Jack Daniel's*, *2.

On the second matter – the proper scope of a likelihood of analysis inquiry – the decision continues:

> But [the likelihood of confusion] inquiry is not blind to the expressive aspect of the Bad Spaniels toy that the Ninth Circuit highlighted. Beyond source designation, VIP uses the marks at issue in an effort to "parody" or "make fun" of Jack Daniel's. And that kind of message matters in assessing confusion because consumers are not so likely to think that the maker of a mocked product is itself doing the mocking.

*Jack Daniel's,* at *10.

The Court also encouraged early dismissal of trademark infringement suits against expressive works, even when they involve source identification:

>That is not to say (far from it) that every infringement case involving a source-identifying use requires full-scale litigation. Some of those uses will not present any plausible likelihood of confusion – because of dissimilarity in the marks or various contextual considerations.

*Jack Daniel's*, at *n2.

Because the district court in *Jack Daniel's* failed to adjust the likelihood of confusion test for parody, the matter was remanded.

The Supreme Court's ruling validates MSCHF's critiques of the district court's ruling here. The district court improperly ignored the binding precedent in *Rogers*, and after failing to apply *Rogers*, the district court applied the wrong test to determine likelihood-of-confusion.

### III.    *Rogers* (Still) Applies to the Art Collective's Expression

*Rogers* remains binding precedent in this Circuit, and the decision in *Jack Daniel's* reinforces that *Rogers* serves as a threshold test to filter out claims against speech protected by the First Amendment and serve as an "escape" from the likelihood of confusion inquiry. *Jack Daniel's*, at *15, n1. Notably, the district court here already addressed this exact issue – it found that MSCHF used MSCHF branding for the *Wavy Baby* piece. (SPA-13). MSCHF did not misappropriate any of Vans' trademarks for its own use as its own trademarks.

####    A.    MSCHF Did Not Use Vans' Trademarks as its own Trademark

The Supreme Court explained that the Lanham Act "most cares" about use of a trademark as a designation of source for the infringer's own goods. *Jack Daniel's*, at *10; *citing* 15 U.S.C. §1127. So in addition to VIP's concession that it was using the marks at issue as source-identifiers and VIP's course of conduct of asserting trademark rights in similar expressions, neither of which occurred here, the Supreme Court considered how likely purchasers encounter the good.

"First, there is the way the product is marketed," the Supreme Court declared in evaluating VIP's use of Bad Spaniel's as a mark. *Jack Daniel's*, at *17. "On the hangtag," the Supreme Court continued, the Bad Spaniels logo and trademarked Silly Squeakers logo both appeared to serve the same source-identifying function. *Id.* This emphasis on branding and marketing is consistent with the United States Patent and Trademark Office's own guidance that ornamentation is not considered trademark use. TMEP 1202.03. The Court observed that what is "most relevant here, are two product logos on the left for the Silly Squeakers line, and on the right for the Bad Spaniels toy." *Jack Daniel's* at *7.

MSCHF, in contrast to VIP, sold *Wavy Baby* from its own MSCHF-branded website, so the appropriate inquiry for understanding the art collective's own branding is MSCHF's website:



(A-387).

On its website, MSCHF prominently features its own name and the descriptive title of the piece, *Wavy Baby*. *Id.* "Wavy" literally describes the shape of the work. Meanwhile, "Baby" refers to the new shape. (A-385). As a descriptive title, it is not a trademark use. 15 U.S.C. §1052(e)(1). MSCHF's use of Wavy Baby also fails as a trademark use because titles of artistic works are not eligible for trademark registration. TMEP (July 2022) §1202.08; *citing* 15 U.S.C. §§ 1051, 1052, and 1127. Nor is there any suggestion that anyone thought the title relates to Vans.

Continuing down the left side, MSCHF's manifesto provides a commentary and critique, then reminds the prudent purchaser what is obvious from the design of the offering: "This is not a skate shoe."[2] *Id.* On the right are images of MSCHF's offering, including the warning label about wearing the shoes. *Id.*

All of these considerations simply affirm the district court's ruling that MSCHF used MSCHF's own branding. (SPA-13). And that self-branding makes sense. MSCHF wants credit for its art, so the art collective did not use Vans' trademarks as symbols **of** the art collective. The art collective evoked Vans' trademarks as a reference **in** the expression. Thus, unlike VIP, MSCHF's expression is entitled to the threshold First Amendment defenses described in *Rogers*.

### B. *Rogers* applies to MSCHF's Commentary on Vans' Old Skool

The district court did not address the *Rogers* test at all. Instead, it first evaluated the standard likelihood of confusion factors *then* considered the art collective's "First Amendment" defenses, which was really a parody analysis. The district court (fleetingly) invoked the First Amendment, but only with a mistaken suggestion that the First Amendment does not apply when the mark is used on competing goods.

The court's misapprehension contradicts considerable precedent in the Second Circuit where *Rogers* applies despite the parties' production or licensing of the same or similar goods or types of works. *See, e.g.*, *Rogers*, 875 F.2d at 994 (competing movies); *Cliffs Notes v. Bantam Doubleday Dell Pub. Grp.*, 886 F.2d 490, 494 (2d Cir. 1989) (competing books); *Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099-1101 (9th Cir. 2008) (video games); *Lemme v. Nat'l Broadcasting Co., Inc.*, 472 F.Supp. 2d 433 (E.D.N.Y. 2007) (TV shows); *Kensington Pub. Corp. v. Gutierrez*, 2009 WL 4277080 (S.D.N.Y. 2009) (books); and *AM General, LLC v. Activision Blizzard, Inc.*, 450 F.Supp.3d 467 (S.D.N.Y. 2020) (video games).

In fact, Jack Daniel's competes with VIP in the dog toy market. *See VIP Prods., LLC, v. Jack Daniel's Props., Inc.*, 291 F. Supp. 3d 891, 898 (D. Ariz. 2018). Yet this fact had no bearing on the Supreme Court's analysis.

Nor does the medium of the expression govern a First Amendment analysis. On appeal, Vans and their *amici* argued that *Rogers* does not apply when a mark is placed on a commercial good. (ECF 75, p. 40). Jack Daniel's and many of the same *amici* made the same argument to the Supreme Court. *See Jack Daniel's* at *6; Brief for Nike, Inc. as Amicus Curiae Supporting Petitioner at 4, *Jack Daniel's Properties, Inc. v. VIP Products LLC*, No. 22-148 (U.S. June 8, 2023).

The Supreme Court, however, did not adopt such a rule. Instead of concerning itself with defining and then determining use on a commercial good, the Supreme Court stated that, "The cardinal sin under the law, as described earlier, is to . . . confuse consumers about source—to make

---

[2] This also is an obvious reference to René Magritte's famous work *The Treachery of Images*, which declares "Ceci n'est pas un pipe" ("This is not a pipe"). (A-276).

SWANSON, MARTIN & BELL, LLP

Page 8

(some of) them think that one producer's products are another's. And that kind of confusion is most likely to arise when someone uses another's trademark as a trademark—meaning, again, as a source identifier—rather than for some other expressive function." *Jack Daniel's*, *supra*, at *14.

The focus on whether the defendant is using the challenged feature as a mark makes more sense than a distinction based on medium because the basic principles of freedom of speech do not vary based on the medium of the message. *Brown v. Enter. Merchants Ass'n*, 586 U.S. 786, 790 (2011) (First Amendment applies to mass produced video games); *citing Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503 (1952) (First Amendment protects for profit movies); *see also Cohen v. California*, 403 U.S. 15 (1971) (First Amendment protects messages on jackets); *Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir. 2006) (First Amendment protects graffiti'd shirts); *Ayres v. City of Chicago*, 125 F.3d 1010, 1014 (7th Cir. 1997) (First Amendment protects t-shirts, even when sold).

Instead of forcing courts to play art critic and determine what mediums and quantities are appropriate for expression, the Supreme Court countenanced a threshold test much closer to MSCHF's proposal in its own *amicus* brief. *See* Brief for MSCHF Product Studio, Inc. as Amicus Curiae Supporting Respondent at 28-32, *Jack Daniel's Properties, Inc. v. VIP Products LLC*, No. 22-148 (U.S. June 8, 2023). MSCHF argued that there is a fundamental difference between using a mark in the expression and using the mark to sell some other good or service. So unlike use in the expression itself, when a parody is used to sell a good, like candy cigarettes, it is entitled to less protection.



*Id.*

The Supreme Court drew a similar line; the barrier to application of *Rogers* is use of the plaintiff's trademark as a trademark by the defendant. *See also*, *Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 812–14 (2d Cir. 1999) (alleged parodies of Harley Davidson's trademarks used to identify source of Grottanelli's motorcycle repair business, not for expression,

not subject to Rogers); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 113 (2d Cir. 2009) (CHARBUCKS mark used only "as a beacon to identify Charbucks as a coffee" not as part of defendant's non-commercial expression).

As the district court already held here, MSCHF used MSCHF branding. So *Rogers* should apply. *Jack Daniel's*, at *n2.

### C. Applying *Rogers*, MSCHF Prevails

#### i. Use of Vans' Marks are Artistically Relevant

MSCHF's *Wavy Baby* piece evoked Vans' trademarks to critique Vans. Unsurprisingly, this matter resembles the several cases that the Supreme Court favorably cited for their application of the *Rogers* test. *Jack Daniel's*, at *7. For example, the Supreme Court favorably cited the Ninth Circuit's ruling in *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 901 (9th Cir. 2002). There, the one-hit wonder Aqua used Mattel's trademark BARBIE® to find fame. Titling their song "Barbie Girl," Aqua "pokes fun at Barbie and the values that Aqua contends she represents." *Mattel*, 296 F.3d at 901. In *Jack Daniel's*, the Supreme Court took no issue with Aqua's use of Mattel's trademarks, observing, "The use did not speak to the song's origin." *Jack Daniel's*, at *7; citing *Mattel*, 296 F.3d at 900, 902.

While "Barbie Girl" uses Mattel's trademark verbatim in both the lyrics and title of the song, MSCHF, as the district court recognized, "distorted [Vans'] Marks" though MSCHF still created an "overall impression" that referenced Vans' Old Skool shoe. That impression is relevant to the expression. As previously noted, there are numerous shoes in the market that are very similar to Vans' Old Skool shoes – much like the numerous dolls similar to Barbie. But MSCHF, like Aqua, created a popular commentary on the most iconic one. (*See, e.g.,* A-278, A-366, A-835).

#### ii. MSCHF's Use is Not Explicitly Misleading

The Supreme Court repeatedly reiterated that the First Amendment is a threshold test applied before reaching a likelihood of confusion inquiry. *See e.g.*, *Jack Daniel's*, at *10. Indeed, the Supreme Court described *Rogers* as an "escape from the likelihood of confusion test." Thus the explicitly misleading prong does not lead back to the likelihood of confusion factors, but rather it means exactly what it says, a use of a mark by a defendant must explicitly mislead a consumer. Or as explained in *Rogers*, implicit suggestion of sponsorship or affiliation is insufficient. *Id.* at 999-1000. As a "First Amendment threshold test" this makes sense because confusing speech is still protected speech. *Hurley v. Irish-Amer Gay, Lesbian, Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995) ("a narrow, succinctly articulable message is not a condition for constitutional protection.").

Indeed, that some people might believe that the use creates a relationship is irrelevant. The Supreme Court favorably cited *Univ. of Ala. Bd. of Trustees v. New Life Art, Inc.*, where the appellate court found the use of the University of Alabama's trademarks in a calendar does not explicitly mislead customers regarding sponsorship or affiliation. 683 F. 3d 1266, 1282 (11th Cir.

SWANSON, MARTIN & BELL, LLP

Page 10

2012). The Eleventh Circuit determined there was no evidence that the defendant ever marketed an unlicensed item as "endorsed" or "sponsored" by the plaintiff, "or otherwise explicitly stated that such items were affiliated with" the plaintiff. *Id.* at 1279. Rather, the Eleventh Circuit held the paintings, prints, and calendars very clearly are embodiments of artistic expression, and are entitled to full First Amendment protection. *Id. See also Brown v. Elec. Arts, Inc*., 724 F.3d 1235, 1245 (9th Cir. 2013) (there must be an "explicit indication," "overt claim," or "explicit misstatement" that caused such consumer confusion); *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1199, 1195 (9th Cir. 2017) (same).

Similarly here, MSCHF does not ever market the *Wavy Baby* as endorsed or licensed by Vans. Instead, MSCHF's only overt claim ties *Wavy Baby* to an express, non-Vans collaborator – the musical artist, Tyga.

**IV. Even if *Rogers* did not apply, the District Court Erroneously Analyzed Likelihood of Confusion**

As MSCHF argued at length in its opening appellate brief, the district court erred in its application of the likelihood of confusion facts. (MSCHF Br. 42-60). That argument possesses special credence in light of the *Jack Daniel's* decision. The Supreme Court's decision is explicit: when a defendant intends to use the plaintiff's marks to "parody" or "make fun" of the plaintiff, "that kind of message matters in assessing confusion because consumers are not so likely to think that the maker of a mocked product is itself doing the mocking." *Jack Daniel's*, at \*6. So parody changes the likelihood of confusion analysis. *Id*. at \*10. Further, in evaluating the parody, context matters. *Jack Daniel's*, at \*n2.

Here, the district court set aside the context in which MSCHF offered its product and further erred in failing to adjust the likelihood of confusion factors to account for MSCHF's parody. As the district court noted, "The satirical message presented by the *Wavy Baby* shoes is not readily perceived from the product without the accompanying manifesto or descriptions." (SPA-13). Even if the satirical message were not clear from the product, the district court correctly observed it is obvious from the manifesto, and as the Supreme Court's reminder about the importance of "contextual considerations" makes clear, the manifesto may not be ignored. *Jack Daniel's*, at \*n2.

**A. The District Court Ignored the Context of MSCHF's Offering**

The Supreme Court decision underscores that courts cannot ignore the context of parody. *Jack Daniel's*, at \*n2. As the Supreme Court previously explained, "in parody …context is everything." *Campbell*, 510 U.S. at 589. This is particularly true where a party relies on visual imagery: "the context in which a symbol is used for purposes of expression is important." *Spence v Washington*, 418 U.S. 405, 410 (1974). So while the district court recognized that MSCHF's

SWANSON, MARTIN & BELL, LLP

Page 11

parodic intent was made plain in the manifesto, it was an error to focus on the "shoes" in isolation to determine that MSCHF did "not meet the requirements of successful parody."[3] (SPA-12).

MSCHF's manifesto, which potential purchasers encountered when deciding to purchase the Wavy Baby artwork, and which the district court recognized as parodic, makes MSCHF's intent to comment on and ridicule Vans unambiguous:

WARNING: EXTREMELY WAVY.

A CLASSIC LOW TOP SKATE SHOE WARPED FOR THE WAVY GENERATION. LET'S GET LIQUID, WITH OUR ASSETS, OUR DIETS, AND OUR SHOES. IT'S THE 21ST CENTURY, THE WATER'S RISING, AND THE ONLY SOLUTION IS TO GET WAVY.

WAVY = A GLITCH IN THE SIMULATION, JUST LIKE AN OLD TV TOO CLOSE TO A MAGNET. WAVY BABY SMASHES THE DIGITAL AND PHYSICAL TOGETHER IN AN OBJECT. THE WARP TRANSFORM IS A PIECE OF 100% DIGITAL VISUAL VERNACULAR APPLIED ON TOP OF A MUNDANE PHYSICAL OBJECT. WAVY BABY IS AN OLD DESIGN PARADIGM RUN THROUGH A NEW ONE.

WAVY BABY IS THE PLATONIC IDEAL OF A SKATE SHOE, WARPED TO SHIT.

SNEAKER COMPANIES ARE IN A CONSTANT CYCLE OF RIFFING ON EACH OTHER, AND USUALLY THE INNOVATIONS IN FORM ARE BORING. STANDARD SHOE INDUSTRY PRACTICE IS: STEAL A SOLE, STEAL AN UPPER, CHANGE A SYMBOL. WHAT A BORING USE OF CULTURAL MATERIAL. WAVY BABY IS A COMPLETE DISTORTION OF AN ENTIRE OBJECT THAT IS ITSELF A SYMBOL.

BABIES ARE THE NEW.
SEGWAYS ARE TECHNOLOGY.
WAVY IS THE NEW TECHNOLOGY.

THIS IS NOT A SKATE SHOE. / CECI N'EST PAS UNE CHAUSSURE DE SKATE

(A-55).

---

[3] As the Supreme Court decision shows, whether or not a parody is "successful" is irrelevant to determining when to adjust the likelihood of confusion test for parody. *Jack Daniel's*, at *18.

As the Supreme Court recognized, "self-deprecation is one thing; self-mockery is far less ordinary." *Jack Daniel's*, at \*10. MSCHF's manifesto explicitly mocks the Vans Old Skool as "mundane" and an "old design" and proclaims MSCHF's new design "warped for the wavy generation." (A-385). To emphasize the outlandishness of MSCHF's own offering, MSCHF calls its own piece "a skate shoe, warped to shit." *Id*. And, if at that point there was any possible confusion that Vans' was behind the artwork, MSCHF announces that "the innovations [of sneaker companies] are boring" and that "standard shoe industry practice is… a boring use of cultural material." *Id.* The manifesto closes with a reminder that unlike the Van's offering, "THIS IS NOT A SKATE SHOE." *Id.*

Under Supreme Court precedent, parody accounts for a broad range of expression. As the Supreme Court acknowledged in *Jack Daniel's*, VIP engaged in a kind of parody because it "communicated a message…about Jack Daniel's". *Id.* at \*2. Certainly parody may include "making fun of," "mockery," and "ridicule." *Jack Daniel's*, at \*10, 18. But parody is broad enough to include any creation that "comments on" the original work. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1993). Here, there is no doubt that MSCHF "comments on" Vans. Moreover, parody is not the only type of expression that deserves assessment under a likelihood of confusion analysis. As the Supreme Court noted, "a trademark's expressive message—particularly a parodic one, as VIP asserts—may properly figure in assessing the likelihood of confusion." *Jack Daniel's*, at \*18.

As the Supreme Court demonstrates in *Jack Daniel's*, the determination of when to apply the likelihood of confusion factors modified for parody is based on the defendant's intent to parody the plaintiff's marks. *Jack Daniel's*, at \*18. As MSCHF's manifesto made clear, MSCHF is engaged in (at least) mockery, ridicule, commentary, and critique of Vans. So as the district court properly recognized but then improperly ignored, MSCHF engaged in parody.

### B. Adjusting the Likelihood of Confusion Factors for Parody, MSCHF Wins

An "expressive message–particularly a parodic one," as the Supreme Court explained, "may properly figure in assessing the likelihood of confusion." *Jack Daniel's*, at \*18. Thus, the lower court erred in failing to adjust the likelihood of confusion factors.

MSCHF demonstrated in its briefing that had the district court accounted for its parody, it would have prevailed on the likelihood of confusion test. (MSCHF Br. 42-60). Vans could conjure no counter argument that had the test for likelihood of confusion test been adjusted for parody it might still prevail. MSCHF incorporates those arguments herein, but in light of the Supreme Court's favorable citation to *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 265 (4th Cir. 2007) and Justice Sotomayor's concurrence, joined by Justice Alito, MSCHF adds a few points.

#### i. Vans Iconic Status Weighs in MSCHF's Favor

Vans holds strong trademarks in a crowded field with many similar shoe designs. (A-300-01; A-364-65). As the Fourth Circuit noted in *Louis Vuitton*, "In the cases of parody, a strong mark's fame and popularity is precisely the mechanism by which likelihood of confusion is

avoided." *Id.* at 261. As the Fourth Circuit continued, "the strength of a famous mark allows consumers immediately to perceive the target of the parody, while simultaneously allowing them to recognize the changes." *Id.*

As the district court recognized, MSCHF "distorted" Vans' trademarks in its expression. (SPA-13). These changes indicate something is afoot. The changes ridicule the design and – as made even more explicit in the full context of MSCHF's manifesto – strip the Vans' Old Skool of its status as a utilitarian good and create a new offering that is "warped to shit." Thus, MSCHF comments on this "entire object that is itself a symbol." (A-385).

### ii.   The Marks are Different

As the Fourth Circuit noted, that symbols are somewhat similar is "the essence of parody." *Id.* at 262. "While a trademark parody necessarily copies enough of the original design to bring it to mind as a target, a successful parody also distinguishes itself." *Id.* If we compare the trademarks used by Vans' and the trademarks used by MSCHF, there is no similarity whatsoever. While Vans shoes are branded as Vans shoes, MSCHF branded its art as MSCHF. (SPA-13). MSCHF is not similar to Vans, and Wavy Baby is not similar to "Old Skool".

Even in comparing the symbols used by MSCHF to invoke Vans, the district court recognized the marks are different. (SPA-13). Those differences are highlighted by the context of the offering, which establishes that MSCHF modified everything in an effort to make a statement. Because MSCHF's piece is a critique of Vans, simply comparing how Vans uses the mark and how MSCHF put those marks on its piece is irrelevant.

MSCHF distinguishes its expression from Vans' by stating "this is not a skate shoe." Unlike the platonic ideal of a skate shoe, "Wavy Baby is…warped to shit," and that unlike how sneaker companies engage in boring innovation, "Wavy Baby is a complete distortion." (A-385).

### iii.   MSCHF Uses Distinct Channels To Sell its Expression

The Fourth Circuit distinguished the sale of Louis Vuitton's goods and the Haute Diggity Dog's trademark use of Chewy Vuiton by noting that Louis Vuitton limits its sales to its own website and boutique stores. *Id.* at 263. MSCHF similarly limits the sale of its expression to its own website and web application. (A-703).

### iv.   There is No Evidence of Actual Confusion.

The concurrence filed by Justice Sotomayor and joined by Justice Alito "emphasize[d] that in the context of parodies and potentially other uses implicating First Amendment concerns, courts should treat the results of surveys with particular caution." *Jack Daniel's*, at *1, (Sotomayor, J., concurring). In the context of parody, the Justices observed, "survey answers may reflect a mistaken belief …that all parodies require some sort of permission." *Id.* And then plaintiffs may "point to this misunderstanding of the legal framework as evidence of consumer confusion." *Id.*

SWANSON, MARTIN & BELL, LLP

Page 14

Although Vans did not submit scientific surveys, they and the district court instead relied on an unscientific survey of social media reaction. (*See e.g.* A-782-85). The unscientific survey results relied on by Vans suggest that social media participants believed that the art collective's parody required some sort of permission from Vans. (*See e.g.*, A-783 ¶7; 784 ¶8). That is precisely the type of confusion which the concurrence makes clear should be ignored. *Jack Daniel's*, at *2, (Sotomayor, J., concurring).[4]

As the concurrence also observed, "Courts should also be attentive to ways in which surveys may artificially prompt such confusion about the law or fail to control for it." *Jack Daniel's*, at *1, (Sotomayor, J., concurring). Again, this is a fatal flaw in the social media "evidence" provided by Vans. Much of the alleged confusion comes from people reacting to photos of the products staged by Vans' lawyers for this litigation, and are completely unrelated to how a reasonably prudent purchaser would consider MSCHF's statement. (*See e.g.*, A-782 ¶5).

**V.      Conclusion**

The Supreme Court demonstrated that the *Rogers* test – like any First Amendment filter – remains viable as a threshold test that should be considered in trademark litigation before any reference to likelihood of confusion. The district court did not do that. The Supreme Court clarified that the limiting factor for application of this threshold test is use as to source of origin at the point of sale, not whether or not the use was on commercial goods. MSCHF uses MSCHF marks to indicate that the *Wavy Baby* artwork comes from MSCHF, and references Vans' marks to critique Vans, so the district court erred in failing to apply *Rogers*.

The Supreme Court then clarified that when the First Amendment does not apply, if a Defendant "intends" its use of the mark to be parodic, the likelihood of confusion factors must be adjusted. The district court did not do that. Once adjusted to account for the parody, the likelihood of confusion test verifies what MSCHF's own experience had already established – purchasers were not confused.

There remains no basis for the district court's preliminary injunction, the escrow of MSCHF's gross revenues, nor the prior restraint on the art collective's freedom of speech. As the Supreme Court acknowledged in *Jack Daniel's*, in cases when the First Amendment defense apply, or there is no plausible likelihood of confusion, the case should be quickly dismissed. *Id.* at *n2. That is the case here, and this Court should vacate the district court's order and dismiss this matter in light of *Jack Daniel's*.

---

[4] For more on why survey evidence in the context of parody is likely to lead to a death spiral for freedom of expression, see MSCHF Amicus Br. at 41-49.

SWANSON, MARTIN & BELL, LLP

Page 15

                                            Very truly yours,

                                            */s/ William D. Patterson*

                                            William D. Patterson

DAVID H. BERNSTEIN
MEGAN K. BANNIGAN
TIMOTHY CUFFMAN
MARISSA MACANENEY
ALESSANDRA G. MASCIANDARO
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000

– and –

WILLIAM D. PATTERSON
NICOLE O'TOOLE PETERSON
SWANSON, MARTIN & BELL, LLP
330 North Wabash Avenue,
Suite 3300
Chicago, Illinois 60611
(312) 321-9100

*Attorneys for Defendant-Appellant*

cc: Counsel of Record, by ECF